**Dennis COKER, on behalf of himself and of all other persons similarly situated, Plaintiff,**

v.

**The PURDUE PHARMA COMPANY, Purdue Pharma L.P., The Purdue Frederick Company, Purdue Pharmaceuticals L.P., and P.F. Laboratories, Inc., Defendants.**

No. 04–2145–DP.

United States District Court, W.D. Tennessee, Western Division.

April 23, 2004.

B.J. Wade, Esq., Glassman, Edwards, Wade & Wyatt, P.C., Memphis, TN, for Plaintiff.

James F. Sanders, Esq., William David Bridgers, Esq., Neal & Harwell, PLC, Nashville, TN, Paul W. Schmidt, Christopher N. Sipes, Mark H. Lynch, Timothy C. Hester, Covington & Burling, Washington, DC, for Defendants.

## ORDER GRANTING MOTION TO REMAND

DONALD, District Judge.

Before the Court is the motion of Dennis Coker ("Plaintiff") to remand this class action to the Circuit Court for Shelby County, Tennessee. The Purdue Pharma Company, Purdue Pharma L.P., The Purdue Frederick Company, Purdue Pharmaceuticals L.P., and P.F. Laboratories, Inc. (collectively "Defendants" or "Purdue") removed the case to this Court on February 27, 2004, pursuant to 28 U.S.C. § 1441(a), arguing that original federal subject matter jurisdiction exists under 28 U.S.C. §§ 1331 and 1338. For the following reasons, the Court grants Plaintiff's motion to remand.

### I. Factual and Procedural Background[1]

Plaintiff is an individual citizen of Tennessee. Defendants are corporations or

---

1. The facts are taken from Plaintiff's complaint and the materials submitted on this

general partnerships organized under the laws of Delaware, New York, or New Jersey. Defendants Purdue Pharma L.P., The Purdue Frederick Company, and The Purdue Pharma Company are in the business of research, development, and sale of pharmaceutical products in the United States. Defendant Purdue Pharmaceuticals L.P. is in the business of manufacturing and formulating medications for sale of pharmaceutical products in the United States. Defendant P.F. Laboratories is in the business of the production of pharmaceutical products in the United States. The named Plaintiff's damages are less than $75,000.00.

Defendants are the owners of several patents[2] for oxycodone hydrochloride controlled release, which they manufacture and market under the brand-name Oxy-Contin® ("OxyContin"). Defendants' Oxy-Contin is one of the best selling severe pain medications in the United States, reaching sales of $1.8 billion annually. It is an opioid analgesic containing a time-release formulation, purportedly so as to release controlled amounts of oxycodone over a twelve-hour period, thus providing continuous pain relief. No generic equivalent to OxyContin is yet available in the marketplace.

In 2000, Defendants filed a patent infringement suit against Endo Pharmaceuticals Holdings Inc. and Endo Pharmaceuticals Inc. (collectively "Endo"), after Endo filed its Abbreviated New Drug Application ("ANDA") for its generic equivalent of OxyContin. The filing of an ANDA grants the manufacturer of the first generic drug to receive approval a 180–day statutory period of market exclusivity during which time the generic drug manufacturer has the right to market its drug absent other generic competition. The generic ANDA

applicant must notify the owner of the brand-name drug of the filing of its ANDA and certify, when appropriate, that the patents covering the brand-name drug are either invalid or not infringed by the generic version. The brand-name drug owner need only file a patent infringement lawsuit within forty-five days so as to block the ANDA applicant's generic drug from entering the market for up to thirty months.

After a non-jury trial, Judge Stein of the United States District Court for the Southern District of New York held that Endo's ANDA infringed Purdue's patents for Oxy-Contin, but that Purdue's inequitable conduct before the United States Patent and Trademark Office ("PTO") during prosecution of the OxyContin patents rendered those patents unenforceable. Specifically, Judge Stein found, by clear and convincing evidence, that Purdue committed an intentional misrepresentation in failing to disclose material information inconsistent with its assertions that it had "surprisingly discovered" that its invention reduced the dosage range and eased titration in comparison to other opioid formulations. *See Purdue Pharma L.P. v. Endo Pharm. Inc.,* No. 00 CIV 8029(SHS), slip op. at *20–*27, 2004 WL 257753 (S.D.N.Y. Jan. 5, 2004). This ruling is now on appeal to the U.S. Court of Appeals for the Federal Circuit.

On January 12, 2004, Plaintiff filed a complaint in the Circuit Court for Shelby County, Tennessee. Plaintiff brings this case on behalf of a purported class of "all natural persons in the State of Tennessee who indirectly purchased OxyContin® manufactured by Defendants at any time during the period December 1, 1995 to the present." (Compl.¶ 15.) Plaintiff alleges that Defendants established and main-

motion to remand.

**2.** Patent No. 5,549,912, Patent No. 5,508,042, and Patent No. 5,656,295.

tained monopolies, contracts, agreements, combinations, and conspiracies in restraint of trade in the market for OxyContin. Plaintiff further avers that Defendants unlawfully attempted to obtain and enforce such a monopoly through material misrepresentations to the PTO and through sham litigation against potential producers of any generic equivalent of the drug. Plaintiff alleges (1) violations of the Tennessee Trade Practices Act, Tenn.Code Ann. § 47–25–101 *et seq.;* (2) violations of the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–18–101 *et seq.;* and (3) common law monopolization.

Defendants removed to this Court on February 27, 2004, arguing as their basis for removal that, while Plaintiff purports to bring only state law causes of action, federal jurisdiction exists based on (1) a substantial federal question as a necessary element of the state claims and (2) complete preemption of the state claims by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Plaintiff filed a motion to remand on March 12, 2004, and Defendants responded on March 30, 2004. Plaintiff replied on April 19, 2004.

This case is one of fifty-two antitrust lawsuits filed against Purdue based on its litigation against Endo in the Southern District of New York. These lawsuits all make essentially the same contentions: that Defendants' patent litigation against Endo was a "sham" and that Defendants used improper conduct in prosecuting their patents. Nineteen of the cases were brought in state courts, and Purdue removed all of those. Twenty-seven of the cases are pending in the Southern District of New York, and Purdue seeks transfer of the remaining cases to that district as well. Defendants' motion to transfer this case to the Southern District of New York is currently pending before this Court.[3]

## II. Removal Standard

A defendant may remove a civil case over which the United States district courts would have original jurisdiction. *See* 28 U.S.C. § 1441(a) (2004). If this Court determines that it would not have had original subject matter jurisdiction over the case, it must remand to state court. *See* 28 U.S.C. § 1447 (2004). Courts should construe removal statutes strictly. *See Alexander v. Elec. Data Sys. Corp.,* 13 F.3d 940, 949 (6th Cir.1994). The defendant seeking removal bears the burden of establishing federal subject matter jurisdiction. *Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 453–54 (6th Cir.1996).

Under the federal courts' supplemental jurisdiction, if at least one of the plaintiff's claims is removable, then any purely state law claims in the case may also be removed. *See* 28 U.S.C. §§ 1367, 1441(c) (2004).

## III. Substantial Federal Question

Among other grounds,[4] the district courts have original federal question jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States," and such cases are removable. 28 U.S.C. §§ 1331, 1441(b) (2004). The district courts have exclusive original jurisdiction over actions "arising under any Act of Congress relating to patents ..." 28

---

**3.** Defendants argue that the Court should deal with their motion to transfer before Plaintiff's motion to remand, so that all remand issues in the nineteen Purdue cases filed in state courts may be dealt with simultaneously by the transferee court. The Court, however, declines to address the transfer issues before determining whether it has jurisdiction over the case.

**4.** Diversity jurisdiction is not present here because damages are less than $75,000.00.

U.S.C. § 1338(a) (2004). The U.S. Supreme Court uses the same standard to evaluate the "arising under" language in both § 1331 and § 1338(a). *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

█ Under the well-pleaded complaint rule, the plaintiff, as "master of his complaint," can generally control the possibility of removal by asserting only state law claims in the complaint. *Alexander*, 13 F.3d at 943. Therefore, the majority of federal question cases will be those in which "federal law creates the cause of action." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). A corollary rule, however, provides that "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Id.* at 22, 103 S.Ct. 2841. Under § 1331, therefore, the district courts' jurisdiction extends to " 'those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law,' in that 'federal law is a necessary element of one of the well-pleaded ... claims.' " *Christianson*, 486 U.S. at 808, 108 S.Ct. 2166 (quoting *Franchise Tax*, 463 U.S. at 27–28, 13, 103 S.Ct. 2841). Similarly, under § 1338, the district courts' jurisdiction extends to those cases "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson*, 486 U.S. at 809, 108 S.Ct. 2166. *See also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *Long v. Bando*, 201 F.3d 754, 759 (6th Cir.2000).

█ It is not enough that a federal issue is merely present in a state law cause of action. *See Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Rather, the federal element must truly be "substantial" and "necessary."[5] In addition, jurisdiction does not exist if only one of the plaintiff's alternate theories for its claim requires resolution of a federal question. *See Christianson*, 486 U.S. at 810, 108 S.Ct. 2166; *Long*, 201 F.3d at 761 (holding that plaintiff's complaint did not invoke federal court's "arising under" jurisdiction because it put forth alternate state and federal policies to support its state law claim). Instead, a claim supported by alternative theories in the complaint may not form the basis for federal question jurisdiction unless federal law is essential to each of those theories. *See Christianson*, 486 U.S. at 810, 108 S.Ct. 2166 (distinguishing plaintiff's "claims" from plaintiff's "theories" and stating that "a claim sup-

**5.** Furthermore, there is authority indicating that the "necessary element" avenue to removal is only available when the federal law composing the necessary element itself could provide a private right of action to one in the plaintiff's situation. *See Merrell Dow*, 478 U.S. at 817, 106 S.Ct. 3229 ("[A] complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.' "); *Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 471–72 (6th Cir. 2003) (same). *But see Long*, 201 F.3d at 759 (stating that *Merrell Dow* "clearly left open the possibility of federal jurisdiction even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interest is raised by a complaint framed in terms of state law, and if resolution of that federal question is necessary to the resolution of the state-law claim").

ported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories"). A federal defense alone cannot support original jurisdiction in the district courts, even if the defense is anticipated in the complaint, and even if both parties admit that the defense is the only question truly at issue in the case. *See id.* at 809, 108 S.Ct. 2166.

■ Defendants argue that Plaintiff's claims require the resolution of substantial questions of federal patent law because all of Plaintiff's allegations of wrongdoing by Defendants are based on Defendants' conduct in obtaining and enforcing their patent rights. In other words, Defendants argue that Plaintiff cannot prove his state law claims without resolving questions of federal patent law. Defendants thus assert that this Court has removal jurisdiction because of a substantial question of federal law.

In the complaint, Plaintiff refers to two types of misconduct by Defendants: (1) that Defendants made material misrepresentations to the PTO in prosecuting their patents, and (2) that Defendants' lawsuit against Endo was "sham" litigation.

(Compl.¶ 22.) These allegations are the basis of Plaintiff's state law claims, i.e. that Defendants engaged in that misconduct to obtain and enforce a monopoly and to restrain trade. Were these two theories Plaintiff's only avenues of proving his claims, then Defendants would have the better of these arguments.[6] The alleged submission of material misrepresentations to the PTO in the prosecution of patents necessarily involves questions of patent law, including what information the patent applicant had a duty to disclose and what information was material to the patent application. Also, an allegation of sham litigation requires the court to determine whether the targeted litigation was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (holding that subjective motivation of party filing challenged suit is relevant only if challenged litigation is first found to be objectively meritless). An evaluation of whether a reasonable litigant could realistically expect success on the merits in Purdue's patent infringement suit against Endo would therefore also necessarily involve resolution of questions of patent law.[7]

---

**6.** Plaintiff's allegations distinguish this case from those that he cites, because those other cases involved allegations of wrongdoing separable from any patents. For example, most of those cases involved agreements among the defendants/patent-holders, or between the defendants/patent-holders and some third party, to restrict or delay entry of the competing generic drug into the market. Thus, the plaintiffs could base antitrust claims on those agreements as conspiracies, and only intent— not any question of patent law—need be proved. *See, e.g., In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F.Supp.2d 740, 747–48 (E.D.N.Y.2001) (plaintiffs alleged that there would have been generic competition if defendants had not reached an unreasonably anti-competitive agreement). Here, on the other hand, Plaintiff alleged only two types of

misconduct, both of which involved patent law.

**7.** Plaintiff argues in his reply memorandum that an allegation of sham patent litigation precludes removal based on patent law. The cases Plaintiff cites to support that argument, however, are inapposite. Specifically, Plaintiff refers to *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F.Supp.2d 1042 (D.Kan.1999), in which the Court remanded the case to state court in part because the plaintiffs' claims did not require resolution of a substantial question of federal patent law. The court stated, "Plaintiffs, however, do not seek to litigate the validity of HMR patents. Rather, they allege that HMR violated Kansas law by instigating patent litigation for the sole purpose of delaying and preventing competition ... Plaintiffs' claims do not depend on whether the HMR patents are valid; they

Plaintiff's complaint, however, demonstrates an alternative theory by which Plaintiff could succeed in proving his state law claims without the Court having to resolve questions of patent law. Specifically, Plaintiff refers to Judge Stein's January 5, 2004 decision:

> After a non-jury trial, a federal court found that, *inter alia,* the Defendants had made numerous misrepresentations to the U.S. PTO and to the Federal Court regarding the product. In addition, the Court found that the Defendants had no evidence to support their claim that the drug was "effective" in low dosages for 90% of its patients.

(Compl.¶ 33.) As Plaintiff argues in his reply brief (though using the incorrect doctrinal label), Judge Stein's holding that Defendants made misrepresentations in their patent prosecution operates as collateral estoppel in this case.

Collateral estoppel will bar litigation of an issue if four specific requirements are met: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding, (2) determination of the issue must have been necessary to the outcome of the prior proceeding, (3) the prior proceeding must have resulted in a final judgment on the merits, and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n,* 821 F.2d 328, 330 (6th Cir.1987). All four requirements are met in this case, based on Judge Stein's ruling. Contrary to Defendants' assertions, the parties' appeal of that ruling to the Federal Circuit does not bar its preclusive effect as a final judgment pending conclusion of that appeal. *See Huron Holding Corp. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 189, 61 S.Ct. 513, 85 L.Ed. 725 (1941) ("[I]n the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality."); *Commodities Export Co. v. U.S. Customs Serv.,* 957 F.2d 223, 228 (6th Cir. 1992) ("[I]t is well-established that a final trial court judgment operates as *res judicata* while an appeal is pending.").

Therefore, because Plaintiff may attempt to use collateral estoppel to prove that Defendants made material misrepresentations to the PTO, Plaintiff has a theory for his state law claims that does not involve the resolution of substantial questions of federal patent law.[8] Effectively, any patent law questions involved in determining whether Defendants made material misrepresentations are replaced by collateral estoppel. Federal law therefore is not a necessary element of Plaintiff's state law claims, as at least one theory allows him to prove them without resolution of a sub-

---

allege only that HMR had an impure heart when it filed suit." *Id.* at 1053–54; *see also Altman v. Bayer Corp.,* 125 F.Supp.2d 666, 674–75 (S.D.N.Y.2000). The Court respectfully disagrees with the reasoning in those cases. Given the U.S. Supreme Court's holding that the subjective intent of a party accused of filing sham litigation is relevant only if the litigation is first shown to be objectively meritless, *see Prof'l Real Estate,* 508 U.S. at 60, 113 S.Ct. 1920, allegations of an "impure heart" do not alleviate the requirement that the objective merits of the targeted suit—here, a patent infringement suit—be addressed first.

8. In order to strip a patentee of its immunity from antitrust liability based on fraud in the prosecution of its patent, an antitrust plaintiff must show that the patentee made knowing and willful misrepresentations to the PTO. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1068 (Fed.Cir.1998). Although Plaintiff may still have to show knowledge and willfulness on Defendants' parts, such a showing of intent does not involve the resolution of questions of federal law.

stantial question of federal law. Accordingly, Defendants' arguments under this removal doctrine are unavailing.

Finally, there is uncertainty as to whether substantial federal question removal jurisdiction continues to exist subsequent to the U.S. Supreme Court's decision in *Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). In that case, the Supreme Court stated, "Thus, a state law claim may be removed to federal court in *only two circumstances*–when Congress expressly so provides, such as in the Price–Anderson Act, or when a federal statute wholly displaces the state-law cause of action through complete preemption." *Id.* at 2063 (emphasis added) (in a footnote, the Supreme Court also acknowledged supplemental jurisdiction over state law claims when at least one federal claim is present, pursuant to 28 U.S.C. § 1367). Based on the quoted language, at least one federal court in the Sixth Circuit has expressly considered whether *Beneficial National Bank* did away with the substantial federal question basis for removal: "Although only the dissent targeted this point, the *Beneficial National Bank* majority effectively reconsidered removal jurisprudence. By recognizing removal *only* in cases involving a congressional mandate or complete pre-emption, the Court arguably eliminated the substantial federal question exception." *Bourke v. Carnahan*, No. C2–03–144, 2003 WL 23412975, at *3 (S.D.Ohio, July 1, 2003) (emphasis in original) (disregarding defendants' arguments for removal based on a substantial federal question, in light of *Beneficial National Bank*). This Court expresses doubt that the Supreme Court would so casually do away with a doctrine that it continuously discussed and refined over many years. In any case, the Court need not decide the effect of *Beneficial National Bank* on substantial federal question removal jurisdiction, having found that Defendants did not meet their burden of proving such a question.

## IV. Complete ERISA Preemption

Federal preemption is generally a defense, which alone would not support removability. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). A further corollary to the well-pleaded complaint rule, however, "is that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64, 107 S.Ct. 1542. The Supreme Court first developed this doctrine in the context of § 301 of the Labor Management Relations Act. *See Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). As the Court later described the *Avco* decision,

> [t]he necessary ground of decision was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Avco* stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.

*Franchise Tax Bd.*, 463 U.S. at 23–24, 103 S.Ct. 2841 (footnote omitted).

■ The Court extended *Avco's* complete preemption analysis to ERISA in *Metropolitan Life Insurance Company v. Taylor*. A state law claim that comes within the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a), "is necessarily federal in character." *Metro. Life Ins.*,

481 U.S. at 67, 107 S.Ct. 1542. Such a claim therefore arises under federal law and is thus removable to federal court. *Id.*

■ ERISA jurisprudence demonstrates that there is a difference between preemption based on ERISA's explicit statutory preemption provision, 29 U.S.C. § 1144(a), and complete preemption sufficient for removal. *See Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir.1995). Under § 1144(a), ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..." 29 U.S.C. § 1144(a) (2004). Pursuant to this provision, a state law cause of action that relates to an ERISA plan may be preempted, i.e., that state law cause of action may not be viable, but § 1144(a) preemption alone is insufficient for removal.[9] *Id.* Rather, for complete preemption and removal jurisdiction to apply, the state law cause of action must also be capable of characterization as a superceding ERISA claim, i.e., it must be the type of claim that could be brought under ERISA's civil enforcement provision. *See Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir.2001) (because plaintiff's state claims are not the equivalent of civil enforcement actions under ERISA, they cannot independently confer federal subject matter jurisdiction); *Alexander*, 13 F.3d at 944–45.

■ Defendants' notice of removal argues for complete ERISA preemption of Plaintiff's state law claims by stating that Plaintiff's proposed class "necessarily affects ERISA participants and beneficiaries." (Notice of Removal, ¶ 19.) Defen-

dants argue that Plaintiff's claims relate to an ERISA plan because Plaintiff attempts to act as an ERISA fiduciary in recovering plan assets and because ERISA plan documents will be critical to determining liability and damages. Defendants further argue that Plaintiff's claims are within the scope of § 1132(a) because he seeks restitution and other equitable relief comparable to that recoverable in ERISA actions for mistaken payments. Defendants' arguments fail on several counts.

First, nothing *in Plaintiff's complaint* supports Defendants' assumption that the proposed class includes ERISA participants and beneficiaries. While it is likely true that a class composed of "all natural persons in the State of Tennessee who indirectly purchased OxyContin® manufactured by Defendants" will include ERISA participants and beneficiaries, none of Plaintiff's allegations mentions the existence of any ERISA plan or the connection of either Plaintiff or any proposed class member to any ERISA plan. The Court declines to create factual allegations from thin air. *Cf. Merrell Dow*, 478 U.S. at 809 n. 6, 106 S.Ct. 3229 ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."). Furthermore, while Defendants attempt to place the burden on Plaintiff to "dispute that he is an ERISA participant or beneficiary, or that he seeks to represent numerous ERISA participants and beneficiaries within his proposed class" (Defs.' Opp'n to Mot. to Remand, at 13), it is Defendants' burden to establish removal jurisdiction. *See Ahearn*, 100 F.3d at 453–54. Defendants did not meet their burden, as they presented nothing concrete to support the addition to

---

9. Preemption based on the "relate to" language of § 1144(a) applies when a cause of action has a connection with or reference to the plan at issue. *See Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991). Conversely, those state ac-

tions that affect an ERISA plan in "too tenuous, remote, or peripheral" a manner do not warrant a finding that they "relate to" that plan under § 1144(a). *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

Plaintiff's complaint of unstated allegations regarding ERISA plans.

Second, the cases that Defendants cite to support their complete preemption arguments are distinguishable, particularly on the ground that the plaintiffs in those cases at least referred to ERISA plans. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.,* No. 01–12257–PBS, 309 F.Supp.2d 165, 2004 WL 585852 (D.Mass.2004) (plaintiffs' complaints brought actions under California state law on behalf of, for example, "all persons or entities in the State of California who paid directly, made co-payments for, or became obligated to pay the costs of, *pursuant to an insurance plan,* Medicare Plan B pharmaceuticals manufactured and sold by defendants") (emphasis added); *Davis v. SmithKline Beecham Clinical Labs., Inc.,* 993 F.Supp. 897, 899 (E.D.Pa.1998) (plaintiff's complaint "explicitly seeks redress on behalf of 'those persons and entities who paid for clinical laboratory tests performed by [defendant], as self-insurers, co-insurers, patients or contributors to *ERISA welfare benefit plans* ' ") (emphasis added). As stated above, the Court will not add non-existent allegations to Plaintiff's complaint. Those cases cited by Defendants in which courts allowed removal based on complete preemption actually involved ERISA plans; no such plan has been shown here.

Third, this is not the type of claim that falls within § 1132(a) so as to allow complete preemption. This provision states, "A civil action may be brought—(1) by a participant or beneficiary—... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the

terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ... "

29 U.S.C. § 1132(a) (2004). Plaintiff brings state law monopolization and consumer protection claims, not any claim directly involving ERISA plan benefits or his rights under an ERISA plan. These claims are based on state laws of general applicability, not laws aimed at ERISA plans or parties involved with such plans. Had any such plan been alleged in the complaint, the Court would be willing to consider the possibility of preemption on the argument that damages could involve recovery of plan benefits, because such a plan may have paid part of Plaintiff's and the class members' costs for OxyContin. Once again, however, Defendants have not met their burden of showing a plan. Furthermore, because Defendants are not parties to any relevant ERISA plan that may exist, any such plan does not give Plaintiff any rights against Defendants, and therefore Plaintiff could not enforce any ERISA rights against Defendants. *See Benton v. Vanderbilt Univ.,* 118 F.Supp.2d 877, 884 (M.D.Tenn.2000). Finally, the language of § 1132(a), referring specifically to rights or benefits "under the terms of the plan," renders this case even more distinct from an ERISA complete preemption situation. The rights that Plaintiff asserts and the relief that he requests are not due him "under the terms of the plan," but based on liability under the state monopolization and consumer protections laws. That the Court might—if any class members are shown to be participants or beneficiaries in an ERISA plan—have eventually to refer to ERISA plan terms to determine what proportion of the cost of OxyContin was borne by the class members does not render this suit comparable to an ERISA enforcement action. Defendants' argu-

ments are simply too attenuated to support complete preemption removal.

## V. Conclusion

The Court finds that Defendants have not met their burden of establishing federal subject matter jurisdiction to support removal. Accordingly, the Court **GRANTS** Plaintiff's motion to remand.

**IT IS SO ORDERED.**