Bob SCHECHER, et al., Plaintiff,

v.

PURDUE PHARMA L.P., Purdue Pharma Company, Purdue Franklin Company, P.F. Laboratories, Inc., Defendants.

No. 04–4015–JAR.

United States District Court, D. Kansas.

May 6, 2004.

---

Peter S. Obetz, Bartimus Frickleton Robertson & Obetz, P.C., Leawood, KS, for Plaintiff.

Christopher N. Sipes, Mark H. Lynch, Paul W. Schmidt, Timothy C. Hester, Covington & Burling, Washington, DC, John L. Oliver, Jr., Oliver, Oliver and Waltz, PC, Cape Girardeau, MO, Lynn Weddle Judkins, Foland Wickens Eisfelder Roper & Hofer PC, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

ROBINSON, District Judge.

This matter comes before the Court on defendants' Motion to Transfer (Doc. 11), plaintiff's Motion to Remand (Doc. 16) and defendants' Motion to Stay (Doc. 41). Defendants Purdue Pharma, L.P., Purdue Pharma Company, Purdue Frederick Co.,[1] and P.F. Laboratories, Inc. seek transfer of this case to the Southern District of New York. Plaintiff Bob Schecher opposes transfer and has filed a Motion to Remand the case to state court for lack of subject matter jurisdiction. Additionally, defendants have filed a Motion to Stay plaintiff's remand motion, pending resolution of the motion to transfer. For the reasons stated below, defendants' motion to transfer is granted, plaintiff's motion to remand is denied, and defendants' motion to stay is denied.

## I. Background

This antitrust litigation was originally filed by plaintiff in the District Court of Shawnee County, Kansas, on January 13, 2004, as a class action on behalf of all persons or entities in the United States who purchased OxyContin® other than for re-sale or distribution from 1995 to the present. Plaintiff also sought to represent a subclass of individuals within Kansas who purchased OxyContin®. In his Complaint, plaintiff asserts violations of the Kansas Restraint of Trade Act, K.S.A. §§ 50–101, 50–112 and 50–117. Plaintiff alleges that Defendants "fraudulently obtained" its patents and relied on those fraudulently obtained patents "to thwart generic competition for OxyContin®" and that, as a result, plaintiff Bob Schecher and the other members of the class paid more for OxyContin® than they would have paid if generic competitors had been allowed to enter the market.

This action follows on the heels of a separate, but related patent action[2] in the United States District Court for the Southern District of New York that defendants brought against Endo Pharmaceuticals (Endo). Following an eleven-day bench trial, Judge Stein issued a memorandum opinion holding that Endo's products infringed upon defendants' OxyContin® Tablets, but that the patents were unenforceable due to defendants' inequitable conduct before the U.S. Patent and Trademark Office (PTO).[3] Further, in its answer to the patent action, Endo asserted antitrust counterclaims and alleged, among other things that defendants had monopolized the market. Fact discovery on the antitrust counterclaims is complete and expert reports have been exchanged, but the counterclaims have yet to be substantively resolved.

Plaintiff's case is not the only related case which followed the New York decision. On April 22, 2004, the Judicial Panel on Multidistrict Litigation entered a Transfer Order which consolidated two actions filed in the District of Connecticut with similar actions pending in the Southern District of New York. The Order states that in addition to the consolidated actions, forty-one related actions have been filed.[4] Twenty-three of these actions are pending in the Southern District of New York and eighteen actions are pending in other districts, including "one action ... in the ... District of Kansas."

---

1. Although plaintiff named the Purdue Franklin Company in his caption, the parties agree he intended to name the Purdue Frederick Company.

2. Indeed, plaintiff quotes from the opinion issued in the case in his Complaint.

3. *Purdue Pharma L.P., v. Endo Pharm., Inc.,* 2004 WL 26523 (S.D.N.Y. January 5, 2004).

4. Defendants have informed the Court that, at the latest tally, fifty-five related actions have been filed.

Though the Transfer Order does not identify the "one action" pending in the District of Kansas by docket number, the Panel's reference was surely to this case, because this case was the only Kansas case included in a list of eighteen related matters pending in judicial districts, which the Panel notified the Court of in mid-March. The Order indicated that "these and any other related actions will be treated as potential tag along actions." To the Court's knowledge, the Panel has yet to issue a transfer order in this case.

## II. Discussion

Defendants contend that the Court should transfer this case to the Southern District of New York and stay plaintiff's motion to remand to allow Judge Stein to resolve the remand issues in all the removed cases simultaneously. Conversely, plaintiff asserts that the threshold jurisdictional issue raised by the remand motion should be addressed before the motion to transfer venue, and that the motion to stay is without merit.

■ The venue statute, 28 U.S.C. § 1404(a), does not vest courts with unlimited power to transfer a civil action to any federal district; rather, § 1404(a) limits transfer of a civil action to "any other district or division where it might have been brought"[5] A district or division is one where the action "might have been brought" if, among other things, when the action began the proposed transferee district court would have had subject matter jurisdiction over the action.[6] Because a court may only transfer a case to a venue where the case could have been brought originally, this Court must necessarily address plaintiff's contention that subject matter jurisdiction is lacking before reaching the motion to transfer.

### A. Motion to Stay

■ Although defendants suggest that it would more efficient to stay plaintiff's pending remand motion to allow Judge Stein to rule on the remand issues at once, the Court disagrees. Judge Vratil recently addressed this precise issue and determined:

> While staying the proceedings might allow a single district court to rule on the jurisdictional issue in the various cases, a stay would not affect the law that applies to the present case and little would be gained by a stay of decision on the motion to remand. The parties would still be subject to Kansas law. No great judicial economy will be realized from a delay. The parties will not save time, for they have already briefed the remand issue. The Court is well versed in both Kansas and federal law, while the transferor court would need to apply the law of different states to different claims. For purposes of judicial economy, the jurisdictional issue should be resolved immediately. If federal jurisdiction does not exist, the case can be remanded before federal resources are further expended. In the Court's view, judicial economy dictates a present ruling on the remand issue.[7]

---

**5.** 28 U.S.C. 1404(a); *Hoffman v. Blaski*, 363 U.S. 335, 343–44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

**6.** *U.S. Sprint Communications Co. v. Boran*, 716 F.Supp. 505, 507 (D.Kan.1988); *U.S. Telecom, Inc. v. Hubert*, 678 F.Supp. 1500, 1504 (D.Kan.1987); *see also Leroy v. Great W. United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) ("Neither venue nor personal jurisdiction is fundamentally preliminary in the sense that subject matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties.")

**7.** *Aetna U.S. Healthcare v. Hoechst Aktiengesellschaft*, 54 F.Supp.2d 1042, 1047 (D.Kan. 1999).

The Court agrees that there is no benefit to be gained from staying the remand motion.

## B. Motion to Remand

 Plaintiff alleges that defendants illegally removed this action and that remand is proper because this court lacks subject matter jurisdiction. A civil action is removable only if plaintiffs could have originally brought the action in federal court.[8] The Court is required to remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[9] Because federal courts are courts of limited jurisdiction, the law imposes a presumption against federal jurisdiction.[10] The rule is inflexible and without exception, and requires a court to deny its jurisdiction in all cases where such jurisdiction does not affirmatively appear in the record.[11] Accordingly, the Court must strictly construe the federal removal statute.[12]

Defendants allege that federal subject matter jurisdiction exists because plaintiff's claims arise under federal patent law creating federal question jurisdiction, diversity jurisdiction is present, and plaintiff's claims are completely pre-empted by ERISA.

### 1. Federal Question Jurisdiction

Plaintiff argues that he has pleaded only state law claims that do not arise under federal law; consequently, federal question jurisdiction is lacking. On the other hand, defendants claim federal jurisdiction is proper because plaintiff's claims "necessarily depend on resolution of a substantial question of patent law" and each of plaintiff's factual allegations can only be resolved as a matter of federal patent law.

Federal district courts have original federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."[13] Additionally, district courts have exclusive original jurisdiction over actions "arising under any Act of Congress relating to patents . . . ."[14] The Supreme Court uses the same standard to evaluate the "arising under" language in both §§ 1331 and 1338(a),[15] that is, "[t]he presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."[16] A defense is not part of a plaintiff's well pleaded statement of his claim.[17] Thus, "a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint and even if both parties admit that the defense is the only question truly at issue in the case."[18]

---

8. 28 U.S.C. § 1441(a).

9. 28 U.S.C. § 1447(c).

10. *Frederick & Warinner v. Lundgren*, 962 F.Supp. 1580, 1582 (D.Kan.1997) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)).

11. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

12. *Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir.1982).

13. 28 U.S.C. § 1331.

14. 28 U.S.C. 1338(a).

15. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

16. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

17. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

18. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

Under the well-pleaded complaint rule, the plaintiff as "master of his complaint," can generally control the possibility of removal by asserting only state law claims in the complaint.[19] Consequently, the majority of federal cases will be those in which "federal law creates the cause of action."[20] A corollary rule, however, provides that "a plaintiff may not defeat removal jurisdiction by omitting to plead necessary federal questions in a complaint."[21] "Even though state law creates [a party's] cause of action, its case might still arise under the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law."[22] Thus, "[m]erely because a claim makes no reference to federal patent law does not necessarily mean that the claim does not arise under patent law."[23] However, jurisdiction does not exist if only one of plaintiff's alternate theories for its claim requires resolution of a federal question.[24]

■ Defendants argue that plaintiff's claims require the resolution of substantial questions of federal patent law because all of plaintiff's allegations are based on defendant's conduct in obtaining and enforcing their patent rights. In his Complaint, Plaintiff refers to two types of misconduct by defendants: that defendants made material misrepresentations to the PTO to fraudulently obtain the patents, and that defendants sued for patent infringement, relying on the "fraudulently obtained patents to thwart generic competition." These allegations are the basis of the plaintiff's state law claims that defendants engaged in misconduct to create an unlawful trust in restraint of trade and to obtain and enforce a monopoly.

Plaintiff's complaint demonstrates that he cannot prove his state law claims without resolving substantial questions of federal patent law.[25] The alleged submission of misrepresentations to the PTO to fraudulently procure patents necessarily involves questions of patent law, including what information the patent applicant had a duty to disclose and what information was material to the patent application.[26] Similarly, the allegation that defendants "relied on its fraudulently obtained patents to thwart generic competition" through lit-

**19.** *Caterpillar Inc.*, 482 U.S. at 392, 107 S.Ct. 2425.

**20.** *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

**21.** *Franchise Tax Bd. of Cal.*, 463 U.S. at 22, 103 S.Ct. 2841.

**22.** *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 118 S.Ct. 523, 529, 139 L.Ed.2d 525 (1997).

**23.** *Christianson*, 486 U.S. at 809 n. 3, 108 S.Ct. 2166.

**24.** *Id.* at 810, 1988-1 Trade Cases P 68081.

**25.** Indeed, Judge Donald reached this same conclusion with identical facts in *Coker v. Purdue Pharma Co.*, 314 F.Supp.2d 777, 2004 WL 870661 at *4, although there the plaintiff also alleged a collateral estoppel theory, which allowed the plaintiff to prove that Defendants made material misrepresentations to the PTO without involving the resolution of substantial questions of federal patent law. *Id.* at *5. No such collateral estoppel theory was presented by plaintiff in this case.

**26.** *See, e.g.,* 37 C.F.R. § 1.56 (discussing the duty to disclose information material to patentability); *Rohm & Haas Co. v. Brotech Corp.*, 770 F.Supp. 928, 934 n. 2 (D.Del.1991) (noting that allegations of fraudulent procurement of a patent involve fundamental issues of patent law which are logically related to infringement issues. "For example, to determine whether an applicant had practiced fraud on the PTO, the factfinder must assess what evidence must be presented to the PTO to obtain legitimate approval of a given patent application.")

igation necessarily turns on questions of federal patent law because the allegation depends on what constitutes a fraudulently obtained patent under federal patent law.[27] Thus, the sole assertions in plaintiff's well-pleaded Complaint to support his charge of an unlawful trust and a monopoly depend on whether defendants fraudulently obtained the OxyContin® patents.

After asserting that his case involves only state law antitrust claims and is divorced from federal patent law, plaintiff curiously suggests that "the patent issues the defendants claim require resolution here have already been resolved by Judge Stein ... who, after conducting a bench trial, issued a lengthy opinion including detailed findings of fact that Defendants obtained their patents for OxyContin® by fraud." However, Judge Stein did not conclude that defendants fraudulently obtained their permits. Instead, Judge Stein analyzed whether the patents were infringed and whether the equitable defense of inequitable conduct barred enforcement of those patents. Fraud on the PTO is distinct from mere inequitable conduct because a fraud finding requires "higher threshold showings of both intent and materiality than does a finding of inequitable conduct."[28] Indeed, "[f]ederal patent law bars the imposition of liability for conduct before the PTO unless the plaintiff can show that the patent holder's conduct amounted to fraud or rendered the patent application process a sham."[29] By pleading fraud in the PTO process and reliance on fraudulently obtained patents as his only basis for an alleged unlawful restraint of trade and a monopoly, plaintiff has raised substantial questions of federal patent law which have not yet been resolved. Thus, plaintiff's own assertions serve to strengthen the case for federal question jurisdiction.

Finally, plaintiff argues that *Aetna U.S. Healthcare v. Hoechst Aktiengesellschaft*[30] dictates that his case be remanded to state

---

**27.** See e.g., *Hunter Douglas, Inc., v. Harmonic Design, Inc.*, 153 F.3d 1318, 1329 (Fed.Cir. 1998) (holding that a state law action for injurious falsehood depended on the resolution of a question of federal patent law where defendant's stated assertion of exclusive patent rights could only be false if the patents were in fact invalid and unenforceable), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir.1999); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 477–78 (Fed.Cir.1993) (holding that § 1338(a) provided jurisdiction over a claim for business disparagement involving false accusations of infringement); *Baxa Corp. v. McGaw, Inc.*, 996 F.Supp. 1044, 1054 (D.Colo.1997) ("A patent is presumed valid. 35 U.S.C. 285 Therefore, to the extent Excelsior relies on ... fraud on the PTO to support its [state law] claims ... it must prove ... fraud and ... knowledge thereof by clear and convincing evidence.")

**28.** *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070–71 (Fed.Cir.1998) (Inequitable conduct is an equitable defense in a patent infringement action and serves as a shield, while a more serious finding of fraud potentially exposes a patentee to antitrust liability and thus serves as a sword.)

**29.** *Hunter Douglas, Inc.*, 153 F.3d at 1336; *In re Indep. Servs. Orgs. Antitrust Litig.*, 964 F.Supp. 1479, 1488–89 (D.Kan.1997) (noting that "where a patent has been lawfully acquired, subsequent conduct under the patent laws cannot trigger any liability under the antitrust law").

**30.** 54 F.Supp.2d 1042 (D.Kan.1999). Plaintiff cites other cases which he claims mandate remand, many of which involve the same facts and law the *Aetna* court encountered, but in none of those cases was a court faced with the precise issue this Court faces. In the only decision interpreting identical facts, *Coker*, 314 F.Supp.2d at ——, 2004 WL at *4, Judge Donald determined that but for a collateral estoppel argument, federal question jurisdiction existed because plaintiff's claims involved substantial questions of federal patent law.

court for lack of federal subject matter jurisdiction. However, *Aetna* is clearly distinguishable from the instant case. In *Aetna*, the defendant branded drug manufacturer had previously brought a patent infringement suit against a proposed generic manufacturer, which then brought antitrust counterclaims.[31] Before the court came to resolve the patent infringement issue, the generic and branded manufacturer entered into a stipulation agreement, by which the generic manufacturer agreed to drop its counterclaims in the patent infringement suit in return for quarterly payments of $10 million, and to diligently prosecute its claim for FDA approval and assert its right as first in line against other potential producers of generic drugs.[32] Subsequently, the two drug manufacturers did not actively pursue the patent infringement suit and the generic drug manufacturer did not begin to sell its generic product.[33] Producers of competing generic products were thus barred from entering the market and unable to compete.[34] On behalf of a class of Kansas plaintiffs, *Aetna* filed suit in state court alleging that the branded and generic manufacturers had harmed members of the public by preventing production of a lower-cost generic drug.[35]

The *Aetna* court held that plaintiff's complaint did not raise substantial issues of federal patent law because "plaintiffs ... do not seek to litigate the validity of the [ ] patents."[36] The court reasoned that "plaintiffs' claims do not depend on whether the patents were valid," because plaintiffs allege only that the drug manufacturer "had an impure heart when it filed [the patent infringement] suit."[37] Additionally, the court noted that "regardless [of] whether the patent is valid, plaintiffs allege that defendants committed other acts of unfair competition—such as the stipulation agreement."[38] In this case, however, plaintiffs claims require litigation of the validity of the patents. Indeed, plaintiff rests his unfair competition and monopoly claims on the fact that defendants "fraudulently obtained" the patents and "relied on the fraudulently obtained patents" to thwart generic competition, issues of federal patent law. Nor are allegations of other acts of unfair competition present, such as a stipulation agreement, as in *Aetna*. For all of these reasons, *Aetna* is not controlling.

Because the Court concludes that federal question jurisdiction is present, it need not address whether diversity of the parties or ERISA preemption might also confer subject matter jurisdiction.

## B. Motion to Transfer Venue

■ In addition to arguing that this case belongs in federal court, defendants suggest that transfer to the Southern District of New York is appropriate. The purpose of 28 U.S.C. § 1404(a) is to permit easy change of venue within a unified federal judicial system.[39] Pursuant to § 1404(a), a court may transfer a case to

---

**31.** *Id.* at 1046.

**32.** *Id.*

**33.** *Id.* at 1046–47.

**34.** *Id.* at 1047.

**35.** *Id.*

**36.** *Aetna U.S. Healthcare, Inc.,* 54 F.Supp.2d at 1053.

**37.** *Id.* at 1053–54.

**38.** *Id.* at 1054.

**39.** *Hill's Pet Prods. v. A.S.U., Inc.,* 808 F.Supp. 774, 776 (D.Kan.1992) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

any other district or division where it might have been brought originally for "the convenience of parties and witnesses" and "in the interest of justice."[40] The Panel's reference to this action as a potential tag-along action in its Transfer Order does not limit the Court's power to enter further procedural orders, including a motion to transfer.[41] But, the party seeking the transfer bears the burden of demonstrating that transfer is appropriate and that the balance of considerations tilts strongly in its favor.[42]

■ The decision whether to grant a party's motion to transfer is within the sound discretion of the district court.[43] A court has the discretion under § 1404(a) to adjudicate transfer motions according to an individualized, case-by-case consideration of convenience and fairness.[44] Among the factors to be considered by a court are:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility

of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.[45]

In considering a motion for transfer, "the trial court is called upon to carefully weigh the competing equities relied upon by the parties for changing the place of trial."[46]

■ The Court concludes that the balance of equities favors transferring this case to the Southern District of New York because any inconvenience caused to the plaintiff by transfer is far outweighed by the interest of justice, and plaintiff's choice of forum is not entitled to blind deference.

*1. The Interest of Justice*

The interest of justice clearly favors transfer. First, the allegations of plaintiff and those at issue in the pending patent litigation are closely related. "The pendency of related litigation in another forum is a proper factor to consider in resolving choice of venue questions."[47] Plaintiff argues that defendants used fraudulently obtained patents to thwart generic competition for OxyContin®, issues that overlap significantly with mat-

---

40. 28 U.S.C. 1404(a).

41. *See* J.P.M.L. Rule 7.4 ("Upon learning of the pendency of a potential tag-along action ... an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court ...." ) (internal quotations omitted); J.P.M.L. Rule 1.5 ("The pendency of a ... conditional transfer order ... before the Panel concerning transfer ... of an action pursuant to 28 U.S.C. 1407 does not affect or suspend orders and pretrial proceedings in the district court where the action is pending and does not in any way limit the pretrial jurisdiction of that court.")

42. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir.1992).

43. *Texas E. Transmission Corp. v. Marine Office–Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir.1978).

44. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991).

45. *Id.*

46. *Hustler Magazine, Inc., v. U.S. District Court for the Dist. of Wyoming*, 790 F.2d 69, 71 (10th Cir.1986).

47. *Hill's Pet Prods.*, 808 F.Supp. 774, 777 (D.Kan.1992).

ters already heard before Judge Stein in the patent case. Moreover, this case raises nearly identical issues to those raised in Endo's antitrust counterclaims. Namely, Endo claimed, *inter alia*, that defendants wrongfully enforced its patents and attempted monopolization, just as plaintiff now claims defendants attempted to stymie competition through fraudulently obtained patents.

In addition, this action raises legal and factual issues that are related to forty other actions pending in federal court, all of which the Judicial Panel on Multidistrict Litigation has termed "potential tag-along actions." By definition, "[a] tag-along action refers to a civil action pending in a district court and involving common questions of fact with actions previously transferred under Section 1407."[48] Because of the similarities in this action and other pending actions, transfer to the Southern District of New York is warranted to both facilitate the interest of justice and avoid inconsistent results. Indeed, were this Court not to transfer the case, "two different federal district courts would be simultaneously litigating claims involving virtually the same parties and the same issues, certainly not a desirable outcome from the standpoint of either judicial efficiency or convenience to the parties and witnesses."

Albeit unsuccessfully, plaintiff attempts to distinguish this case from those cases already pending in the New York court in a bid to avoid transfer. First, plaintiff argues that "none of the cases pending in the S.D.N.Y. assert claims under Kansas law on behalf of indirect purchasers of OxyContin® in the State of Kansas." But, this argument is simply incorrect as plaintiff's class is the same as eighteen purported classes of indirect purchasers pending in the Southern District of New York. In addition, plaintiff states that the pending New York cases do not support transfer because they "allege violations of federal antitrust law, not Kansas state law." However, a number of the cases currently pending in the Southern District of New York expressly include claims under the same Kansas law that plaintiff invokes. Hence, plaintiff's argument only bolsters the reasons for transfer.

For the same reason, plaintiff's argument that the Kansas courts' familiarity with Kansas law weighs against transferring this case to New York fails. This Court has already determined that plaintiff's well-pleaded case raises substantial issues of federal patent law, giving federal courts exclusive jurisdiction over plaintiff's claims. Thus, the only remaining decision is whether this Court or Judge Stein, who is intimately familiar with the facts upon which this case is based, is best equipped to resolve plaintiff's claims. Because cases invoking Kansas law are currently before the New York court, Judge Stein is already familiar with Kansas law. In any event, the Court is confident Judge Stein can properly apply Kansas law.

### 2. The Convenience of the Parties and Witnesses

The Court finds that because nearly all the events giving rise to the Complaint occurred in New York, the convenience of the parties and witnesses would be best served by transferring this case to the Southern District of New York. Defendants have no facilities in Kansas, and no witnesses with knowledge of the prosecution of the patents are located in Kansas. Rather, OxyContin® was developed and the patents were prosecuted in New York and Connecticut. Moreover, all of the defendants' witnesses who testified in the previous patent infringement lawsuit reside in the New York metropolitan area and are within the Court's subpoena pow-

---

48. J.P.M.L. Rule 1.1.

er.[49] Although plaintiff alleges that his Complaint pertains to defendants' conduct in Kansas, the root of his Complaint stems from the defendants' reliance on the fraudulently obtained patents to thwart competition and the effect such monopolization had upon the Kansas market, which are both inexorably linked to the New York litigation.

### 3. Plaintiff's Choice of Forum

 The Court must normally give great weight to a plaintiff's choice of forum.[50] However, when a plaintiff is a class representative, that weight is diminished and factors other than plaintiff's choice must necessarily take on increased significance.[51] The weight accorded a plaintiff's choice of forum is also reduced when the plaintiff does not reside in the forum.[52] Additionally, when the facts giving rise to a lawsuit have no material relation or significant connection to plaintiff's chosen forum, plaintiff's choice of forum is given reduced weight on motion to transfer."[53]

Plaintiff chose Kansas as his forum and the Court must give some deference to his choice, but this deference need not be blind. Plaintiff brings this action as a class representative so the weight normally given to his choice of forum is diminished. Moreover, while plaintiff resides in Kansas, he seeks to represent a nationwide class of plaintiffs in his lawsuit. According to plaintiff's Complaint, "there are hundreds of thousands of members of the Class and the Kansas Class who are geographically dispersed throughout Kansas and the United States." Furthermore, the facts giving rise to this lawsuit, i.e, the

fraudulent procurement of patents, occurred in New York and Connecticut, not Kansas so that such facts have no significant connection to plaintiff's chosen forum other than the fact that plaintiff is a Kansas resident. Thus, the Court concludes that the balance of equities, even after taking into account plaintiff's choice of forum, require that this case be transferred to the Southern District of New York.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Transfer (Doc. 11) is GRANTED.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Motion to Remand (Doc. 16) is DENIED.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Motion to Stay (Doc. 41) is DENIED.

**IT IS SO ORDERED.**

**49.** The Southern District of New York can compel the appearance of anyone within 100 miles of New York. *See* Fed.R.Civ.P. 4(k)(1)(B).

**50.** *KCJ Corp. v. Kinetic Concepts, Inc.,* 18 F.Supp.2d 1212, 1214 (D.Kan.1998).

**51.** *Shapiro v. Merrill Lynch & Co.,* 634 F.Supp. 587, 589 (S.D.Ohio 1986).

**52.** *Id.*

**53.** *Cook v. Atchison, Topeka & Santa Fe Ry. Co.,* 816 F.Supp. 667, 669 (D.Kan.1993).